# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1801

_____

Thomas Carrington,    *
                      *
    Plaintiff-Appellant,    *
                      *    Appeal from the United States
    v.                *    District Court for the Southern
                      *    District of Iowa.
City of Des Moines, Iowa,    *
                      *
    Defendant-Appellee.    *

_____

Submitted: December 15, 2006
Filed: April 6, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Thomas Marcus Carrington claims that the City of Des Moines discriminated against him because of his race while he was a City employee. *See* IOWA CODE § 216.6(1)(a); 42 U.S.C. §§ 1981, 1983, 2000e-2(a)(1). Carrington also contends he was reprimanded, and ultimately fired, for opposing this discrimination. *See* IOWA CODE § 216.11(2); 42 U.S.C. § 2000e-3(a). The district court[1] granted the City summary judgment. Carrington appeals. This court affirms.

_____

[1] The Honorable Thomas J. Shields, Chief Magistrate Judge, United States District Court for the Southern District of Iowa.

I.

Carrington, an African-American, began working for the Public Works Department in 1999. The Department issued him a "Written Reminder" in April 2002. Specifically, Rick Powell (his immediate supervisor) alleged that Carrington called him an "ignorant simple minded prejudice [sic] mother f_____." Carrington denies saying this, claiming that Powell called him "lazy." Their supervisor visited Carrington's job location to discuss the incident, but Carrington was not there. He was not found at two other sites, either. A subsequent investigation questioned the quality and quantity of his work. When Carrington completed his assignment later that week, the supervisor reported that "the workmanship is poor and the manhole is still above grade. The work will need to be redone." After two pre-disciplinary hearings, the Public Works Director sent him the "written reminder of our expectations concerning your contributions as a sewer maintenance worker."

In September 2002, Carrington transferred to the Housing Services Department as a custodian for the City's public housing apartments. In November, he received a "verbal reprimand for leaving work early" without permission on October 25. In a letter summarizing the hearing, Michael E. Matthes, then Acting Director of the Housing Agency, noted that "a significant communication problem exists between you [Carrington] and your co-workers." Matthes scheduled a meeting "to attempt to find a way for all of you to communicate so that conflict is avoided in the future, and to repair your working relationship."

On the morning of June 17, 2003, a resident at one of Carrington's facilities, East View Manor, complained to the City that the hallways had not been cleaned properly and were "a disgrace." Dwight T. Blumhorst, Carrington's supervisor, radioed him to discuss the situation. Blumhorst says that Carrington refused to clean East View and "started yelling." Carrington claims that Blumhorst was abusive toward him. Matthes investigated East View that afternoon, finding garbage un-

emptied, bathrooms un-cleaned, and one wing un-vacuumed. Matthes reviewed the surveillance tapes, finding Carrington absent without permission for more than 30 minutes on June 17.

On June 20, Matthes sent Carrington a letter scheduling a pre-disciplinary hearing for June 26. Carrington requested that Willie Robinson, the City's Equal Opportunity Administrator, attend, so Matthes re-scheduled it for June 30. At the hearing, Matthes found that he left work without permission, claimed to work when he did not, failed to perform assigned work, and failed to "provide proper care and maintenance." Matthes suspended him for one day without pay.

Carrington says that Robinson "found that there was nothing to suggest Mr. Carrington had done anything wrong in June of 2003." Robinson's actual memo, however, is more nuanced: "Most of the evidence appears to support Carrington's contention that he was not aware that cleaning East View Manor was his responsibility." Robinson added, "I cannot establish that Carrington was absent from work without approval on June 17." Carrington appealed to the Des Moines Civil Service Commission, which (after a hearing, where Robinson testified) upheld the suspension.

On March 11, 2004, Carrington interfered with an eviction at Royal View Manor. His job description does not mention evictions, and he had never been involved in one. Carrington admits that he "wasn't supposed to help" and did not get permission from Blumhorst. Moreover, Blumhorst recently had told Carrington, in Matthes's presence, "not to interject yourself into tenant disputes or issues" and "not to engage in police type action". According to surveillance tapes, Carrington took a resident's table and chair from the curb and loaded them in a City pickup. The tape also shows him moving two chairs bound for the curb back into the building. After an investigation, two pre-disciplinary hearings, and because of his past disciplinary

record, on April 27 Chris Johansen (who replaced Matthes as Director of the Housing Services Department) fired Carrington under the City's progressive discipline policy.

Between March 2002 and April 2004, Carrington wrote numerous letters and memoranda complaining of mistreatment by supervisors and co-workers, and asking the City to investigate. Some letters plainly allege racial discrimination; others do not. Carrington verbally complained to Willie Robinson about discrimination in November 2002, but withdrew the complaint. He approached Robinson again in May 2003. Carrington wrote a memo to Matthes and Johansen, announcing that he was "starting the process to file an official harassment and discrimination complaint" against Blumhorst, which he brought to the June 30 pre-disciplinary hearing. Carrington and Matthes discussed the memo, and agreed that Matthes could "table" his investigation of the allegations.

Carrington filed two formal complaints with the Iowa Civil Rights Commission and the federal Equal Employment Opportunity Commission – on June 20, 2003, and April 5, 2004. On April 27, Carrington amended the latter complaint to document his termination that day. The ICRC closed both complaints. The EEOC issued right-to-sue letters for both. Carrington attacks the City for failing to investigate, alleging a causal relationship between the complaints and the disciplinary actions.

## II.

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); **FED. R. CIV. P. 56(c)**. "We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005).

-4-

## III.

The only issue on appeal is Carrington's retaliation claim.

In the absence of direct evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs retaliation claims. *See* ***Womack v. Munson***, 619 F.2d 1292, 1296 (8th Cir. 1980). First, Carrington must make a prima facie case: 1) he engaged in protected conduct; 2) a reasonable employee would have found the challenged action materially adverse; and, 3) the materially adverse action was causally linked to the protected conduct. ***Higgins v. Gonzales***, 2007 WL 817505, at \*8 (8th Cir. Mar. 20, 2007). The second prong is "objective, requiring us to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions." ***Id.*** (citing ***Burlington N. & Santa Fe Ry. v. White***, 126 S.Ct. 2405, 2412-13 (2006)).

If Carrington makes a prima facie case, then the City must "articulate a legitimate, non-discriminatory reason for the dismissal." ***Womack***, 619 F.2d at 1296. The burden then shifts back to Carrington to show "the proffered justification was in fact a pretext, a cover up for retaliation." ***Id.***

At summary judgment, the moving party (here, the City) carries "the ultimate burden of proof . . . to establish that there are no material facts in dispute and that, as a matter of law, the movant is entitled to judgment." ***Oldham v. West***, 47 F.3d 985, 988 (8th Cir. 1995). As to Carrington, the plaintiff and non-moving party, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986).

It is undisputed that Carrington's numerous verbal and written complaints of discrimination are protected activity. He was fired, so the second prong is also satisfied. The issue is whether the adverse employment actions were causally related to the protected activity.

Carrington has no direct evidence of this. Rather, he characterizes the facts as "a pattern of protected activity and discipline." Specifically, he summarizes:

> Mr. Carrington made at least three complaints of discrimination and retaliation. They were all followed by progressive levels of discipline that included two of the three decision-makers that fired Mr. Carrington.

The timeline in this case does not support an inference of causation. Carrington consistently engaged in protected activity *after* supervisors began to investigate his job performance. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 504 (8th Cir. 2005). And "post-hoc complaints did not without more raise a retaliation bar to the proposed discipline because 'the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.' Indeed, complaining of discrimination in response to a charge of workplace misconduct is an abuse of the anti-retaliation remedy." *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004).

First, Carrington presented the City with a statement on March 19, 2002, alleging "harassment" and "retaliation." This was after the City began investigating his job performance (March 4), and after the first of two pre-disciplinary hearings (March 13).

Next, Carrington verbally complained to Robinson, the EEO officer, in the fall of 2002 about discrimination by Blumhorst. Robinson encouraged him to discuss it

with Matthes. By his own account, Carrington spoke with Matthes "several days" before receiving the November 7 letter scheduling a pre-disciplinary hearing for leaving work early on October 25. But e-mails show Matthes decided ten days earlier (October 28), "this will probably require a disciplinary hearing." After the hearing, Carrington replied to the "verbal reprimand" with a letter reiterating his "discrimination" claims.

In early May 2003, Carrington spoke to Robinson again about discrimination by Blumhorst. On June 17, a resident complained that a hallway was "a disgrace." On June 20, Matthes scheduled the pre-disciplinary hearing that resulted in a one-day suspension. Also on June 20, Carrington filed a complaint with the Iowa Civil Rights Commission, citing the scheduled pre-disciplinary hearing as the most recent act of discrimination. On June 23, he delivered a protected memo to the City's Human Resources Department. He authored a memo dated June 19 – alleging "harassment" against Blumhorst and notifying Matthes and Johansen of his ICRC complaint – that was not delivered to Matthes until the June 30 hearing. Carrington responded to the suspension with a letter charging racial discrimination.

Finally, on March 22, 2004, the City notified Carrington of a pre-disciplinary hearing to discuss the March 11 eviction. A hearing was held March 23, and a second April 8. Between the hearings, he delivered two protected memoranda to Johansen (March 25, March 26), and another after the second hearing (April 13). Carrington filed another ICRC complaint (April 5), amending it the day he was fired (April 27).

This timeline does not support an inference of causation between the protected activity and the adverse employment actions taken by the City. "An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) (alteration in

original). Carrington has no additional evidence. His performance and discipline issues further undercut inferring causation. *See Kasper*, 425 F.3d at 504. The City has established that he cannot make a prima facie case of retaliation as required by *McDonnell Douglas*. Rule 56 mandates summary judgment against Carrington, because he cannot make his case at trial. *See Catrett*, 477 U.S. at 322. Viewing the record most favorably to Carrington, the district court properly entered summary judgment for the City.

IV.

The district court "declined to make a quantum leap to find that Carrington's termination in 2004, was causally related to either his race or because he was exercising his statutorily protected right to voice, and write, complaints about what he perceived to be discrimination in the City's housing department." Carrington alleges that to reach this conclusion, the court applied "a different standard to the analysis of the facts for Summary Judgment than what the Jury will see at trial." He proposes that if he can "show a question of fact" on whether "retaliation was a motivating factor," then he should survive summary judgment.

Under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "if the plaintiff produces direct evidence that an illegitimate criterion, such as gender, 'played a motivating part in [the] employment decision,'" then "the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination." *Cronquist v. City of Minneapolis*, 237 F.3d 920, 924 (8th Cir. 2001) (alteration in original). "[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the fact finder on one point, and then the employer, if it wishes to prevail, must persuade it on another." *Price Waterhouse*, 490 U.S. at 246. *Price Waterhouse* was "superseded in part by the Civil Rights Act of 1991," so that "a Title VII plaintiff who shows that an impermissible factor motivated an adverse

employment action could receive some relief, including attorney's fees, even if the employer were to prevail on its dual motive defense." ***Norbeck v. Basin Elec. Power Coop.***, 215 F.3d 848, 852 (8th Cir. 2000). *See also* 42 U.S.C. § 2000e-2(m).

But *Price Waterhouse* (and the other cases Carrington cites to support his motivating-factor theory) focuses on discrimination, not retaliation. This Court held in *Norbeck*, 215 F.3d at 852, that 42 U.S.C. § 2000e-2(m) – which Carrington cites – does not apply to retaliation claims.

Under *McDonnell Douglas*, if Carrington makes a prima facie case of retaliation (he does not) that the City rebuts with a legitimate, non-discriminatory reason, then he "can avoid summary judgment only if the evidence in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [a prohibited motive] was *a determinative factor* in the adverse employment decision." ***Cronquist***, 237 F.3d at 926 (emphasis added) (alteration in original). At summary judgment, Carrington must show a "genuine issue of material fact" that the City's stated reason for the discharge is pretextual and that retaliation was a determinative – not merely a motivating – factor. The record does not support such an inference, and this court declines to adopt Carrington's weakened standard.

Carrington believes this court's jury instructions require proof that "the plaintiff's complaint was a motivating factor in the defendant's decision to discharge the plaintiff." *See* 8TH CIR. CIVIL JURY INSTR. 5.62 (2007). Section 5.96 says, "the plaintiff's (sex, gender, race, national origin, disability) was a 'motivating factor,' if the plaintiff's (sex, gender, race, national origin, disability) played a part [or a role]" in the adverse employment action. The Notes on Use for section 5.96 refer to *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993): "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process *and had a determinative influence on the*

*outcome*." (emphasis added). The 5.96 Comments continue, "'Motivating' is often used in a direct evidence, mixed-motive case brought under *Price Waterhouse* . . .. 'Determining factor' is appropriate in an indirect evidence, pretext case brought under the decisional format of *McDonnell Douglas*". And the Notes on Use for the introductory section 5.01 refer to the "determining factor/*McDonnell Douglas* format." The district court correctly applied the law to Carrington's retaliation claim, using the same standard a jury would have used.[2]

## V.

Carrington attacks the district court for ruling on his discrimination claim, which he claims was voluntarily dismissed. There is no record of such a dismissal, and the City contests his right to "unilaterally dismiss his race discrimination and hostile work environment claims after the City had moved for summary judgment." *See* FED. R. CIV. P. 41(a). He also criticizes the City for failing to investigate his complaints, but he does not relate this to his retaliation claim. Carrington has waived any issue about his discrimination claim on appeal.

## VI.

The judgment of the district court is affirmed.

_____

---

[2] Carrington also argues that the district court improperly "require[d] a finding of discrimination or harassment as an element of the retaliation case." On the contrary, the district court did not conflate the two.