# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2677

_____

Ashlie E. Van Horn,      *

          *

        Appellant,      *

          *    Appeal from the United States

    v.                *    District Court for the

          *    Southern District of Iowa.

Best Buy Stores, L.P.;      *

Jeff Clark,              *

          *

        Appellees.      *

_____

Submitted: March 11, 2008
Filed: May 23, 2008 (Corrected: 05/29/2008)

_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Ashlie Van Horn brought an action in state court for retaliatory discharge against her former employer, Best Buy Stores, L.P., and her store manager, Jeff Clark. After removing the case to federal court, the defendants moved for summary judgment, which the district court[1] granted. Ms. Van Horn appealed and we affirm.

_____

[1]The Honorable Thomas J. Shields, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties. *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 73.

Ms. Van Horn began working for Best Buy as a sales manager in-training at its West Des Moines, Iowa, store in November, 2002. Two months later, Mr. Clark, the general manager of a Best Buy store scheduled to open in the spring in Ames, Iowa, hired Ms. Van Horn as the store's inventory manager. On October 1, 2003, Mr. Clark terminated her employment at the same time that a company reorganization eliminated her position of inventory manager. She maintains that Mr. Clark could have placed her in another job but that he discharged her, at least in part, because she had reported sexual harassment or what she reasonably believed to be sexual harassment by two sales managers. The defendants contend that she was terminated because the company reorganized and because she was not qualified for the new job that was created when the position of inventory manager and merchandise manager were combined.

I.

Before ruling on the defendants' summary judgment motion, the district court denied Ms. Van Horn's motion to strike the documents filed in support of that motion. We find no merit to her contention that we should vacate the judgment because the defendants' documents were not "authenticated properly, by affidavit or in some other lawful manner," S.D. Iowa L.R. 56(e); *see also* Fed. R. Civ. P. 56(e) (2006). Ms. Van Horn does not argue that any document is not what it purports to be, but only that the defendants failed fully to comply with the rules for authentication. Federal Rule of Evidence 901, which Ms. Van Horn relies on, explains that the "requirement of authentication ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

At the time that the district court denied Ms. Van Horn's motion to strike, Rule 56(c) specifically provided that "depositions" could be relied on at summary judgment, Fed. R. Civ. P. 56 (2006), and we see no error in the court accepting as authentic the pages in the appendix that appear to be from Ms. Van Horn's deposition, including the deposition's cover page. (Courts may also rely on depositions under the

rule's current language since they are plainly "discovery and disclosure materials," Fed. R. Civ. P. 56(c) (2008)). The defendants' appendix also included Mr. Clark's affidavit, which we believe met the requirements for supporting affidavits set out in Rule 56(e) (2006). Attached to Mr. Clark's affidavit were seven documents that were provided in response to requests for production or identified as exhibits at Ms. Van Horn's deposition. The documents include a job description for an inventory manager, a performance counseling record and a notice of separation directed to Ms. Van Horn from Mr. Clark with what appears to be Mr. Clark's signature at the bottom of each, and materials regarding Best Buy's reorganization plan; all of the listed documents have a Best Buy logo on them. Mr. Clark attested to the authenticity of the attached documents, and Ms. Van Horn alleged in her petition that Mr. Clark hired her as an inventory manager, supervised her, disciplined her, and terminated her. Based on Ms. Van Horn's allegations, we believe that Mr. Clark had sufficient knowledge to attest to the authenticity of the documents that we have named, and we conclude that there was a sufficient basis for finding that the documents were "what [their] proponent[s] claim[]." Fed. R. Evid. 901(a). (Though filed in the alternative to her motion to strike, we note that Ms. Van Horn's response to the summary judgment motion relied on documents in the defendants' appendix and included nothing to show that any of those documents were not what they appeared to be.)

We also conclude that the defendants met their initial burden of notifying the district court of the basis for their summary judgment motion and identifying the documents that they believed demonstrated the absence of a material fact, thereby shifting the burden to Ms. Van Horn to show that an issue of material fact remained. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

II.

Ms. Van Horn sued both defendants for retaliatory discharge under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000e-3(a), and the Iowa Civil Rights Act (ICRA), *see* Iowa Code § 216.11.2. Title VII prohibits an employer from

discriminating against an employee because he or she "has opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The district court properly granted summary judgment in favor of Mr. Clark on the Title VII claim because that law does not provide for an action against an individual supervisor, *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998), though the ICRA's language permits such an action, *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999); *see* Iowa Code § 216.11.2.

In most respects, Iowa courts have used the analytical framework used for Title VII claims, and have looked to federal law for guidance, in deciding cases under the ICRA because the ICRA is modeled in part on Title VII. *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005); *see Johnson v. University of Iowa*, 431 F.3d 325, 332 (8th Cir. 2005). Ms. Van Horn's three remaining retaliation claims thus required her first to make out a *prima facie* case by showing that she engaged in protected conduct, that the employer treated her in a manner that a reasonable employee would have found materially adverse, and that the protected conduct was causally related to the adverse action. *See Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir. 2007); *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 750 (Iowa 2006). If she did so, the defendants would have the burden to produce evidence of a legitimate non-retaliatory reason for the adverse action, and she would then have an opportunity to show that the given reason was a pretext for retaliation. *Carrington*, 481 F.3d at 1050; *see Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989).

We consider first whether Ms. Van Horn made out a *prima facie* case. We need not address the first two elements of such a case because the defendants admitted, for purposes of summary judgment, that Ms. Van Horn engaged in statutorily protected activity, and her termination is plainly an adverse employment action. The only remaining element is causation, which the district court concluded was not adequately supported. As with all summary judgment issues, we consider this question *de novo*, viewing the facts in the light most favorable to Ms. Van Horn, the non-moving party,

-4-

and giving her the benefit of all reasonable inferences. *See Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Ms. Van Horn's protected conduct consisted of her reporting the behavior of two sales managers, Ed Stald and Nathan Mayberry, to her supervisors and to the district human resources manager. Although Ms. Van Horn admits that Mr. Clark had additional reasons for discharging her, she strenuously contends that she needed to show only that her reports were a "motivating factor" in his decision, as that term is defined in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-42 (1980). We have held, however, that the *Price Waterhouse* standard does not apply to retaliation claims: To make out a retaliation claim, the plaintiff must show that the protected conduct was a "determinative – not merely motivating – factor" in the employer's adverse employment decision. *Carrington*, 481 F.3d at 1053. We therefore consider whether the evidence supports an inference that Ms. Van Horn's reports regarding Mr. Stald and Mr. Mayberry were a "determining factor" in Mr. Clark's decision to terminate her employment.

When Best Buy hired Ms. Van Horn in November, 2001, as a sales manager in-training at its store in West Des Moines, Iowa, she began her training by "shadowing" Mr. Stald, the store's sales manager. In December, she was asking about Best Buy's dress code and inquired whether she could wear a skirt to work; Mr. Stald said that it was all right "as long as I can see your snatch." Ms. Van Horn was offended by his response and reported it to the general manager in-training, who later told her that he had reported the response to the general manager. The general manager talked with Ms. Van Horn and said that he would question Mr. Stald about the comment. Not long after that, Mr. Clark hired her as the inventory manager of the Ames store. Ms. Van Horn went to Ames in January and had no further contact with Mr. Stald.

The same month that she moved to Ames, however, Ms. Van Horn spoke again of the incident: While attending management training at Best Buy's headquarters in

Minnesota, she brought up Mr. Stald's comment in a small group session on sexual harassment. In February, shortly after she returned to the store, Mr. Clark told her that Rebecca Bush, the district human services manager, wanted to talk with her. Ms. Van Horn called Ms. Bush, who told her that someone had reported Mr. Stald's comment on Best Buy's open line (apparently a line for anonymous reports) and had mentioned Ms. Van Horn. When Ms. Van Horn confirmed Mr. Stald's remark, Ms. Bush apologized, said that the West Des Moines general manager should have told her (Ms. Bush) about it, and promised to investigate. Mr. Stald received a final warning later that month.

In July or August, 2003, Ms. Van Horn reported to Ms. Bush that employees had told her that the sales manager, Nathan Mayberry, was engaging in inappropriate conduct, such as bragging about having "hot women" working for him in sales, making inappropriate comments to employees, offering to waive a charge for a customer who was a massage therapist in return for her giving him a massage, and showing employees Playboy magazine "playmates" that he had on his cell phone. Ms. Bush said that she had heard concerns about Mr. Mayberry before. Ms. Van Horn also gave Mr. Clark the information and told him that she had notified Ms. Bush.

Not long afterward, Mr. Mayberry asked Ms. Van Horn in Mr. Clark's presence why she had passed on complaints about him to Ms. Bush, and she replied that it was her responsibility to let human resources know about employees' complaints. Addressing Mr. Mayberry but looking at Mr. Clark, she added that only two people knew that she had called Ms. Bush and that they "better not have told you because it was supposed to be confidential"; Mr. Clark said nothing. At some point after Ms. Van Horn's report, Mr. Mayberry began working as a sales manager at the West Des Moines store.

We do not believe that Ms. Van Horn produced sufficient evidence to support a finding that her reports about Mr. Stald and Mr. Mayberry were a "determinative

factor" in Mr. Clark's decision to discharge her. Her last report about Mr. Stald was far removed from her job loss eight months later. "Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005). Furthermore, Mr. Stald's misconduct and Ms. Van Horn's first report of it occurred in a different location from the store where Mr. Clark, the decision-maker in this case, was the general manager. We also note that when Ms. Van Horn told Mr. Clark in February that she had reported Mr. Stald's comment to Ms. Bush, Mr. Clark did not indicate that he knew Mr. Stald or that he was troubled by what she had done, and there is no evidence that Mr. Stald's name was mentioned again.

Ms. Van Horn reported the complaints about Mr. Mayberry to Ms. Bush and to Mr. Clark six months after she reported Mr. Stald's comment, but Mr. Clark did not discharge Ms. Van Horn until another two months had passed. Though in rare circumstances an adverse action may follow so closely upon protected conduct as to justify an inference of a causal connection between the two, we have held that an interval of two months is too long to support such an inference, *see Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). As we have already said, Ms. Van Horn did offer evidence that supported an inference that Mr. Clark told Mr. Mayberry about her report to Ms. Bush, which may reflect some sympathy for Mr. Mayberry's position, but we do not think that such sympathy can support an inference that her report was a determinative factor in Mr. Clark's decision to discharge her.

We also reject Ms. Van Horn's contention in her brief that her proof of causation is strengthened by the "on-going poor working relationship between Clark and [her]." She indicates that Mr. Clark was envious of her because he was not promoted to general manager until he had been at Best Buy over three years, whereas she was considered for such a promotion after being there less than four months.

Even if true, of course, such evidence does not assist her in showing that she was terminated because of her protected conduct. In fact, it cuts against such a conclusion.

We are somewhat troubled by Ms. Van Horn's evidence that Mr. Clark would say "HR" and "game off" when she entered a room or joined a conversation where other managers or supervisors were present and "game on" when she left. She told him that he was being unprofessional and that she did not appreciate it, but he did not stop. Because "HR" refers to human services, the department charged with enforcing rules of conduct, Mr. Clark's remarks could be interpreted as mocking Ms. Van Horn's focus on rule enforcement by warning the other employees that they should be circumspect in her presence. We see little evidence, however, to connect Mr. Clark's behavior to Ms. Van Horn reporting Mr. Stald or Mr. Mayberry. In her brief, Ms. Van Horn says that Mr. Clark began making these remarks "not long after the store opened" in April, two months after Ms. Van Horn last reported Mr. Stald's remark and long before she had even heard about Mr. Mayberry's conduct.

Mr. Clark's mocking comments seem to coincide instead with Ms. Van Horn's disapproval of his own conduct. Ms. Van Horn stated that she would tell Mr. Clark if she "felt that he or another manager did something" that she thought was having a negative effect on employees or customers at the store. His first "HR" and "game on-game off" comments occurred around the time the store opened. At about the same time, according to Ms. Van Horn's statement to the state civil rights commission, Mr. Clark was ignoring rules that other employees had to follow, and she talked to him about it. Although Mr. Clark told his employees that soft drinks were prohibited on the sales floor, he took drinks on the floor with him. And he failed to check his belongings through security when leaving for the day in violation of company rules. When Ms. Van Horn notified Mr. Clark that other employees were complaining about his noncompliance, he told her that she needed "more edge." He often made this comment to her, and we think that an inference could be drawn that he was telling her to live "closer to the edge" instead of strictly by the rules. In her brief, after saying

-8-

that Mr. Clark began "showing his dislike for [her] professionalism" when the store opened, she explains that he allowed an employee to "special order products under a false name." When she refused to allow the employee do so and discussed the matter with Mr. Clark, he again said that she needed "more edge." This evidence does little to strengthen an inference that Mr. Clark discharged Ms. Van Horn for protected activity. In fact, it supports an inference that Mr. Clark may have disliked Ms. Van Horn for entirely different reasons.

We think that a fact-finder might possibly infer from the evidence that Ms. Van Horn's report about Mr. Mayberry reinforced Mr. Clark's opinion that she was too concerned about rules. But we conclude that the evidence simply cannot support a reasonable inference, as opposed to a speculative guess, that her two acts of protected conduct in reporting Ms. Stald and Mr. Mayberry were a determinative factor, not merely a motivating factor, in Mr. Clark's decision to discharge her when her position was eliminated. Ms. Van Horn therefore failed to make out a *prima facie* case of retaliation and we affirm the judgment of the district court.

_____