# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3867

_____

| | | |
|---|---|---|
| Alireza Bakhtiari | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Paula M. Lutz, Dr., Dean of | * | District of Missouri. |
| College of Arts & Sciences, | * | |
| University of Missouri - Rolla; | * | |
| Board of Curators of the | * | |
| Corporation of the Curators of | * | |
| the University of Missouri; | * | |
| Curators of the University of | * | |
| Missouri, a public corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 13, 2007
Filed: November 15, 2007

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

Alireza Bakhtiari appeals from the district court's[1] adverse grant of summary judgment in favor of Dr. Paula Lutz and the University of Missouri-Rolla (UMR) in this employment discrimination and civil rights case. We affirm.

## I.    BACKGROUND

We recite the facts in the light most favorable to Bakhtiari, the non-moving party. Weyrauch v. Cigna Life Ins. Co., 416 F.3d 717, 720 (8th Cir. 2005). In the fall of 2001, the Chemistry Department at UMR recruited Bakhtiari, an Iranian national, to be a graduate teaching assistant (TA) and a participant in the Chemistry Ph.D. program. Bakhtiari reported to campus and commenced his studies and work as a TA in January 2002. As part of his Ph.D. studies, Bakhtiari enrolled in an advanced inorganic chemistry course with Dr. Gary Long for the semester beginning in January 2002. Not satisfied with the ultimate grade he received in that course, Bakhtiari filed a grade appeal in August 2002, alleging that Dr. Long excessively missed class, mismanaged the course, and graded capriciously. A hearing on the matter was conducted in November 2002, and Bakhtiari's grade remained unchanged after that procedure. Unhappy with this result, Bakhtiari communicated with Dean Paula Lutz on numerous occasions between November 2002 and January 2004 to express his displeasure about the grade appeal outcome and to request further action. Also during this time period, Bakhtiari made complaints to UMR's international affairs office regarding UMR's compliance with Department of Homeland Security (DHS) regulations. In October 2003, a UMR employee within the international affairs office reported to her supervisor that she met with Bakhtiari and they discussed DHS's "special registration" requirements for foreign nationals.

---

[1]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties, pursuant to 28 U.S.C. § 636(c).

In December 2003, Bakhtiari filed a grievance with UMR's EEO Affirmative Action office, complaining that the student affairs office had treated him in a derogatory manner while investigating his possible involvement with anonymous emails sent to a female UMR student.

During the spring 2004 semester, Bakhtiari, in his position as a TA, was assigned to redesign and re-write the freshman chemistry laboratory syllabus. Classes began on January 12, 2004. However, later that same month, Bakhtiari was informed by Dr. Ekkehard Sinn, Chair of the Chemistry Department at UMR, that UMR had decided to dismiss him as a TA, effective immediately. No official reason for his dismissal was ever given. In February 2004, UMR administration officials ordered the information technology (IT) department to freeze Bakhtiari's computer account. In March 2004, Bakhtiari officially withdrew as a student because UMR officials demanded full tuition payment for that semester. Bakhtiari, however, continued to communicate with UMR officials about the status of his email account. Bakhtiari thought that even though a freeze had been placed on the account, the contents of the account would be preserved at least until February 2005, and there is evidence in the record to support this understanding. Nonetheless, UMR officials deleted Bakhtiari's email account in May 2004, but contend that they backed-up the contents of the account onto two CDs before doing so.

Bakhtiari brought this lawsuit in August 2004, alleging that UMR had retaliated against him for his complaints regarding the grade appeal process and for his complaints regarding the immigration and student affairs issues. Bakhtiari also alleged claims under 42 U.S.C. §§ 1981 and 1983, and state law for breach of contract and promissory estoppel. In the course of the litigation, UMR turned over the two CDs containing Bakhtiari's email account information. Bakhtiari contends that while parts of his email account are contained on the CDs, a large portion of the data is missing. Accordingly, Bakhtiari moved for sanctions due to spoliation of evidence with regard to his missing email data. In response, UMR submitted evidence to the

district court that after its IT department copied the contents of the email account onto the CDs, the account was automatically deleted by campus automated systems maintenance. UMR also produced evidence that third parties had access to Bakhtiari's account before campus officials froze it, and argued that this could account for any allegedly missing data. The district court denied the motion for sanctions, finding no evidence that UMR acted with intent to destroy evidence.

UMR subsequently moved for summary judgment, which the district court granted. The district court found that Bakhtiari's prior complaints were not "protected activity" for purposes of a retaliation cause of action and that in any event, UMR offered legitimate reasons for terminating Bakhtiari's TA appointment. With regard to the section 1981 and 1983 claims and the state law claims, the district court held that because Bakhtiari sued UMR officials only in their official capacities, they were entitled to Eleventh Amendment immunity.

## II.    DISCUSSION

### A.    Spoliation

We review the district court's decision not to sanction UMR for spoliation of evidence for an abuse of discretion. Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1005 (8th Cir. 2006). A spoliation sanction requires a finding that a party intentionally destroyed evidence with a desire to suppress the truth. Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007).

The district court did not abuse its discretion in refusing to sanction UMR for the alleged spoliation of evidence. UMR offered credible IT evidence that it had taken the appropriate steps to back-up Bakhtiari's electronic mail account onto CDs. The district court was entitled to credit UMR's explanations when resolving this evidentiary dispute and motion for sanctions. For example, UMR offered several

alternatives as to what might have happened to allegedly missing emails, many of them attributable to Bakhtiari, or his representatives who had access to his email account before it was frozen. UMR also presented evidence that Bakhtiari himself had asked individuals to delete portions of his email account. Furthermore, we agree with the district court that the fact that deletion of his electronic account occurred before this lawsuit was filed further undercuts Bakhtiari's claims that UMR acted with a desire to suppress the truth. See id. (rejecting argument that "because litigation was likely, Greyhound had a duty to preserve . . . data" and noting that "ultimate focus" for imposing spoliation sanctions is "the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation"). Under these circumstances, we find that the district court did not abuse its discretion, and Bakhtiari's spoliation argument is without merit.[2]

## B. Retaliation

Because there is no evidence, direct or circumstantial,[3] "showing a specific link

---

[2]In his Second Amended Complaint, Bakhtiari included a claim for Intentional Spoliation of Evidence. In light of our analysis of the spoliation sanctions issue, we conclude that the district court properly dismissed this claim on summary judgment.

[3]The concurring opinion objects to the use of the word "circumstantial" in conjunction with the word "direct" in the discussion of discriminatory retaliation, vel non. It is respectfully suggested that Supreme Court precedent requires the language used. In this regard, both words are employed in a purely evidentiary context, and not necessarily in the "causal" sense discussed by Chief Judge Loken in Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004), from which case the term "direct evidence" seems to have taken on a new and broader meaning, possibly one unique to this circuit. See, e.g., Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042 (8th Cir. 2007). The term "direct evidence," as used, is simply evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004); Black's Law Dictionary 596 (8th ed. 2004). The term "circumstantial evidence," on the other hand, is "proof of a chain of facts and circumstances" indicating the

existence of a fact, United States v. Curry, 187 F.3d 762, 767 (7th Cir. 1999) (quotation omitted), or "[e]vidence based on inference and not on personal knowledge or observation." Black's Law Dictionary 595 (8th ed. 2004).

In Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a mixed-motive case as differentiated from a single-motive case under McDonnell Douglas, see Griffith, 387 F.3d at 743, Justice O'Connor, in her controlling concurrence, stated: "[I]n order to justify shifting the burden on the *issue of causation* [of discriminatory animus] to the defendant, a . . . plaintiff must show by *direct evidence* that an illegitimate criterion was a substantial factor in the decision." Price Waterhouse, 490 U.S. at 276 (emphasis added). Congress disagreed with this analysis or at least with some of the numerous lower court interpretations of her articulation. Accordingly, the legislators amended Title VII, revising and reordering liability determinations and damage-finding procedures, at least in a mixed-motive case. Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m). Subsequently, the Supreme Court, in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), analyzed the Act's amendments in relationship to Price Waterhouse, realigning by its opinion burdens of proof and institutional and individual liabilities arising from invidious discrimination in mixed-motive disputes. But what appears to have been lost by the two-judge concurrence in this case are the several basic, and longstanding, evidentiary rules noted and specifically recalled in Desert Palace.

Justice Thomas, writing for a unanimous Court in Desert Palace states "that we should not depart from the '[c]onventional rul[e] of civil litigation [that] generally appl[ies] in [all] Title VII cases.' [Price Waterhouse, 490 U.S. at 253]. That rule requires a plaintiff to prove his case 'by a preponderance of the evidence,' [id.], using 'direct or circumstantial evidence,' Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)." 539 U.S. at 99 (some alterations in original). Justice Thomas further discusses the sufficiency of circumstantial evidence in civil rights litigation, noting that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." 539 U.S. at 100.

The concurrence appears to advance the idea that in the face of a motion for summary judgment, a single-motive Title VII case, not supported by "direct evidence" but supported by "circumstantial evidence" tending to show a specific link to prohibited discriminatory practices, may not proceed directly to trial–or to dismissal if the proffered evidence is insufficient as a matter of law–but must first, in every

between" Bakhtiari and any alleged retaliatory practices prohibited by Title VII, Griffith v. City of Des Moines, 387 F.3d 733 (8th Cir. 2004), the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973) applies. Under this analysis, the employee must first establish a prima facie case of retaliation by showing the following: (1) he engaged in statutorily protected activity; (2) the employer took an adverse action against him; and (3) a connection between the two occurrences. Green v. Franklin Nat'l Bank, 459 F.3d 903, 914 (8th Cir. 2006). "Protected activity" in this context includes opposition to employment practices prohibited under Title VII; however, a plaintiff employee need not establish that the conduct he opposed was in fact prohibited under Title VII; rather he need only demonstrate that he had a "good faith, reasonable belief that the underlying challenged conduct violated [Title VII]." Buettner v. Arch Coal Sales Co., 216 F.3d 707, 714 (8th Cir. 2000).

If the plaintiff succeeds in establishing a prima facie case, a presumption of retaliation results, and the burden of production shifts to the employer, who must rebut the presumption with evidence of a legitimate, nonretaliatory reason for the challenged action. Green, 459 F.3d at 914. If the employer meets that burden, the employee may prevail by showing that the employer's reason was a pretext for retaliation. Id.

---

instance, be relegated to the McDonnell Douglas three-part presumption of discrimination paradigm. After Desert Palace, this is simply an untenable concept. In Desert Palace, Justice Thomas emphatically put to rest the theory that circumstantial evidence may only serve in a single-issue civil rights case to establish the "presumption of discrimination" upon which the McDonnell Douglas procedure and analysis rely. While circumstantial evidence may, indeed, be used for that presumption-creating purpose, if necessary, it may also be used in the same manner as direct evidence if it establishes an unbroken chain of proof leading to unlawful discrimination. Accordingly, the use of the words "direct or circumstantial" comports with binding precedent.

Bakhtiari cannot clear the first <u>McDonnell Douglas</u> hurdle because he did not engage in any "protected" actions as an employee of UMR within the meaning of a federal employment discrimination case. Bakhtiari alleges that his protected activity consisted of: his threat that he would pursue his grade appeal with the United States Department of Education; complaining to UMR's international affairs office about the way UMR handled matters pertaining to his student immigration status; and complaining that a UMR student affairs office employee spoke to him in a discriminatory manner during a student conduct investigation. All of these activities pertain to Bakhtiari's status as a student, however, and not as a TA employed by UMR.

Pursuing a grade appeal, even to the Department of Education, does not constitute protected action within the context of Bakhtiari's employment at UMR. In his deposition, Bakhtiari admitted that his grade appeal had "nothing" to do with his position as a TA, and only impacted the course that he took as a graduate student. <u>See Artis v. Francis Howell N. Band Booster Ass'n, Inc.</u>, 161 F.3d 1178, 1183-84 (8th Cir. 1998) (holding that a plaintiff's internal complaints to school officials about the treatment of students is not a protected activity within the scope of Title VII retaliation provisions). Not only is this conduct not protected activity, Bakhtiari could not possibly have a good faith belief that it was protected when he admitted that the grade appeal only impacted the course he took as a student.

Nor do the complaints to the international affairs office about his student immigration status and his complaint about the employee in the student affairs office comprise protected activity. Bakhtiari's participation in these activities did not amount to opposition to prohibited employment practices. <u>Id.</u> at 1183 ("We must first determine whether [plaintiff] engaged in a protected activity, i.e., whether he opposed an unlawful employment practice."). Perhaps they were legitimate complaints about unsavory actions by UMR officials. Nonetheless, that possibility does not transform these complaints into complaints about unlawful employment practices. Complaining

about an entity's "actions outside the ambit of an employment practice is unprotected by Title VII." Id. Here, Bakhtiari made complaints about UMR as a university, not about UMR as an employer. Title VII simply does not protect this conduct. Evans v. Kan. City, Mo. Sch. Dist., 65 F.3d 98, 100-02 (8th Cir.1995) (reversing a judgment for a plaintiff teacher's Title VII retaliation claims where alleged retaliation stemmed from teacher's opposition to employer school's desegregation plan and not from teacher's employment with school).

Because we find that Bakhtiari did not engage in protected activity as required by Title VII, we need not consider Bakhtiari's evidence regarding pretext. Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002). Accordingly, we affirm the district court's grant of summary judgment on Bakhtiari's Title VII retaliation claim.

## C.    Remaining Claims

Bakhtiari sued each of the defendants in their official capacities only. His failure to name these parties in their individual capacities invalidates his remaining claims for relief under sections 1981 and 1983, and the state law claims, because these state defendants have not waived Eleventh Amendment immunity. Hafer v. Melo, 502 U.S. 21, 25 (1991) (holding that suits against state officials in their official capacities are suits against the state). Bakhtiari claims that because these defendants acted with "malice" and purchased liability insurance, they waived their immunity. Bakhtiari bases his insurance arguments upon the Missouri statutory grant of immunity found in Missouri Revised Statutes §§ 537.600 et seq., not Eleventh Amendment immunity. As the UMR defendants point out, they did not assert immunity pursuant to the Missouri statute, but instead have asserted Eleventh Amendment immunity. Nor are Bakhtiari's malice arguments persuasive. Accordingly, these arguments are without merit, and we affirm the district court's dismissal of these claims.

## III.    CONCLUSION

We affirm the district court.

SHEPHERD, Circuit Judge, with whom MURPHY, Circuit Judge, joins, concurring in part and writing separately in part.

I concur in the Court's decision but write separately because I respectfully disagree with the statement in Part II.B that the McDonnell Douglas framework applies to Bakhtiari's retaliation claim "[b]ecause there is no direct *or* circumstantial evidence" of retaliation. Ante at 5 (emphasis added). When a plaintiff produces direct evidence of discrimination or retaliation, the McDonnell Douglas burden-shifting analysis need not be employed. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985). Circumstantial evidence cases are different, for the law of this circuit instructs that "[b]ecause [Bakhtiari] presented no *direct* evidence of retaliation, we analyze his claim under the McDonnell Douglas burden-shifting analysis." Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 917 (8th Cir. 2007) (emphasis added); see Carrington v. City of Des Moines, 481 F.3d 1046, 1050 (8th Cir. 2007) ("*In the absence of direct evidence*, the burden-shifting framework of McDonnell Douglas . . . governs retaliation claims.") (emphasis added); Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007) ("*Without direct evidence of a retaliatory motive*, we analyze retaliation claims (whether under Title VII, the ADA, or the ADEA), under the burden-shifting framework of McDonnell Douglas . . . .") (emphasis added). Because this is a circumstantial evidence case, I agree that the McDonnell Douglas burden-shifting analysis governs Bakhtiari's retaliation claim and that, under this framework, his claim fails.

_____