# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1598

_____

Lola Ann Brannum,                          *
                                           *
        Appellant,                   *
                                           *  Appeal from the United States
    v.                                *  District Court for the
                                           *  Eastern District of Missouri.
Missouri Department of Corrections,        *
                                           *
        Appellee.                    *

_____

Submitted: December 10, 2007
Filed: March 3, 2008

_____

Before COLLOTON, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.[1]

Lola Ann Brannum appeals from a grant of summary judgment in favor of her employer, the Missouri Department of Corrections (MDOC), on her retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court[2] held that Brannum failed to establish a prima facie case of retaliation and,

_____

[1]Judge Colloton and Judge Benton concur in all but the last sentence of footnote 4.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

furthermore, that Brannum did not prove MDOC's proffered reasons for the adverse employment actions she suffered were a pretext for retaliation. We affirm.

## I. BACKGROUND

We recite the facts in the light most favorable to Brannum, the nonmoving party, and give her the benefit of all reasonable inferences. Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 476 (8th Cir. 2004). Brannum is a correctional officer employed by MDOC at the Potosi Correctional Center. In the summer of 2003, Brannum worked in the Special Needs Unit (SNU), a unit for developmentally disabled and mentally ill inmates.

On June 23, 2003, Brannum was working a shift with a new officer, William Bjork, when they were approached by Sharon Gifford, the functional unit manager of the SNU. Gifford asked Bjork whether he was enjoying his SNU placement. Bjork responded that the SNU was not what he had expected and that he planned to "bid out of the [SNU]" eventually. Gifford became visibly upset, and told Bjork he could not continue working in the SNU without special training. Brannum, who witnessed this exchange, then reminded Gifford that she (Brannum) had worked in the SNU for over a year without the required SNU training. In response, Gifford allegedly told Brannum, "[y]ou don't need the training, women are better by and large as they do a better job than men do anyway and are more patient and nurturing than men and we have had no complaints about you." Gifford then went to several other correctional officers on duty and told them she was removing Bjork from his post. Bjork was removed from the SNU for the remainder of the day, but he remained assigned to the unit and returned to work there the following day.

On June 23, Bjork filed a memorandum with Captain Garry Branch describing his conversation with Gifford and accusing Gifford of sexual harassment. Brannum signed the memorandum as a witness to the conversation. On June 27, Bjork filed a

formal employee grievance with MDOC Superintendent Don Roper, relating Gifford's comment and accusing her of sexual harassment and "prejudice towards opposite sex (men)." Brannum was also listed on this document as a witness to the conversation.

On July 1, 2003, Brannum was on duty in the SNU when an inmate, Bruce Samson, became upset with her. Brannum asked Officers John Barker, Reuben Cook and Rodney Beers, also on duty in the SNU at the time, to speak with Samson and attempt to calm him down. According to Brannum, those officers and Samson briefly exchanged words and the officers eventually escorted Samson back to his cell using a "soft empty hand" escort.[3] According to Samson, however, the officers roughly grabbed him by the arm and forced him into his cell, slamming his leg in the cell door in the process. Samson reported the incident to Sergeant Kelley Brownlee, another correctional officer, that same day. Pursuant to MDOC policy, officers must immediately notify a superior about any use of force (other than a soft empty hand escort or verbal command), fill out a use-of-force report and submit the report to a supervisor before going off duty. The following day, Sergeant Brownlee notified Gifford of Samson's allegations after Brownlee determined that none of the officers on duty at the time reported the incident to a supervisor or recorded it in the control room log.

MDOC also has a nondiscretionary policy that requires an investigation be made into any alleged unreported use of force. Pursuant to that policy, MDOC launched an investigation into Samson's allegations. The day after the alleged incident, MDOC Investigator Tom King photographed bruises on Samson's arm and shoulder area and his right thigh. Shortly thereafter, MDOC Investigator Mike O'Brien interviewed Samson and the officers on duty at the time of the incident, as

---

[3]The "soft empty hand" escort is a method of escorting a handcuffed inmate by holding onto the handcuffs and leading the inmate. According to Superintendent Don Roper, the "soft empty hand" escort is considered "normal course of business," and is not a reportable use of force.

well as another inmate, just paroled, who witnessed the incident. The former inmate corroborated Samson's allegations. Similarly, Officer Cook admitted to O'Brien that he and the other officers used force against Samson. On August 18, 2003, O'Brien submitted a final investigative report to MDOC authorities regarding the incident. In his report, O'Brien concluded that Samson was likely the victim of an unreported use of force, but was unable to determine whether the force used was excessive. O'Brien also concluded that Brannum had violated MDOC policy by discussing the ongoing, confidential investigation with persons inside and outside MDOC, including the former inmate. On October 16, 2003, Brannum was permanently removed from her post in the SNU and reassigned to a position as a temporary utility officer.

In October of 2003, Brannum filed an administrative charge of discrimination, with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, alleging unlawful retaliation. She received a Right to Sue Notice dated June 15, 2005. On December 2, 2003, George Lombardi, MDOC Director of the Division of Adult Institutions, issued a formal letter of reprimand to Brannum as a result of the Samson incident. Brannum was reprimanded for failing to summon a supervisor during or after the incident, failing to report the use of force, collaborating to mislead the investigation, soliciting and submitting false testimony to investigators, providing false responses to investigators, and engaging in unauthorized discussions about a confidential grievance that was under review. As a result of this letter, Brannum was prevented from applying for promotions within MDOC for one year.

Brannum filed this action on July 2, 2005, and filed an amended complaint on July 20, 2005, alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Brannum contends that MDOC initiated the investigation into the Samson incident, removed her from her SNU post and reprimanded her in retaliation for her assistance to Bjork in reporting Gifford's alleged harassment. MDOC subsequently moved for summary judgment, which the district court granted. The district court found Brannum could not establish a prima facie case

of retaliation, because she could not have reasonably believed she was objecting to conduct made unlawful by Title VII. Moreover, the district court found Brannum failed to rebut MDOC's legitimate, nonretaliatory reasons for its actions. This appeal followed.

For reversal, Brannum argues the district court erred in finding she did not engage in protected activity by assisting Bjork in reporting Gifford's comments. She also contends she raised a genuine issue of material fact as to pretext.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006), and may affirm on any ground supported by the record. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). "'We will uphold the judgment if the evidence, 'viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" Cherry, 361 F.3d at 478 (quoting Trammel v. Simmons First Bank, 345 F.3d 611, 613 (8th Cir. 2003)).

Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006). Thus, an employer may not take adverse action against an employee because the employee has "opposed any practice made an unlawful employment practice by [Title VII]," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "'The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause.'" Barker v. Mo. Dep't of Corr., No. 07-1422, slip op. at 4 (8th Cir. Jan. 24, 2008) (quoting

Gilooly v. Mo. Dep't of Health & Senior Servs., 421 F.3d 734, 741 (8th Cir. 2005) (Colloton, J., concurring in part and dissenting in part)).

We analyze Brannum's Title VII claim under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which both parties invoke. Under this analysis, Brannum bears the initial burden of establishing a prima facie case of retaliation. Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713-14 (8th Cir. 2000). To do so, Brannum must show that she engaged in statutorily protected activity, she suffered an adverse employment action, and there is a causal connection between her involvement in the protected activity and the adverse employment action that she suffered. Wallace, 442 F.3d at 1119. This court has held that "a plaintiff employee need not establish that the conduct he opposed was in fact prohibited under Title VII" to satisfy the first element. Bakhtiari v. Lutz, 507 F.3d 1132, 1137 (8th Cir. 2007). Rather, at least in the opposition clause context,[4] Brannum must simply prove she "had a 'good faith, reasonable belief that the

---

[4]Brannum asserts for the first time on appeal that her conduct falls within Title VII's participation clause and that the district court erred in holding her to the "objectively reasonable, good faith belief" standard. She contends that this clause offers absolute protection for any participation in a Title VII proceeding or investigation, whether or not the participant has an objectively reasonable, good faith belief that discrimination actually occurred. We decline to address the merits of these arguments, however, as Brannum did not pursue them before the district court and this court generally "will not entertain a new argument on appeal from the grant of summary judgment." Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999). While the author of this opinion recognizes that this firmly established precedent has been disregarded in two instances by this court, see Walker v. City of Kansas City, Mo., 911 F.2d 80 (8th Cir. 1990); United States v. Lucas, 499 F.3d 769 (8th Cir. 2007) (en banc), it is nonetheless the correct rule and is applicable here. See Walker, 911 F.2d at 98-99 (Lay, C.J., dissenting); Walker v. City of Kansas City, Mo., 919 F.2d 1339, 1342 (8th Cir. 1990) (Lay, C.J., dissenting from the denial of the petition for rehearing en banc); Lucas, 499 F.3d at 789-92 (Beam, J., dissenting). See also Jeffrey Brandon Morris, Establishing Justice in Middle America: A History of the United States Court of Appeals for the Eighth Circuit, 248 (Univ. of Minn. Press 2007).

underlying challenged conduct violated [Title VII].'"  Id. (alteration in original) (quoting Buettner, 216 F.3d at 714).

If Brannum succeeds in establishing a prima facie case, a presumption of retaliatory motive arises and the burden shifts to MDOC to rebut that presumption by offering a legitimate, nonretaliatory reason for any adverse employment action that Brannum suffered.  Id.  If MDOC can do so, the burden shifts back to Brannum to prove the proffered reason is merely a pretext for retaliation and, ultimately, that MDOC was actually motivated by retaliatory animus.  Buettner, 216 F.3d at 714.

Here, the district court found Brannum could not satisfy her initial burden under McDonnell Douglas, because she failed to show she engaged in statutorily protected activity.  Brannum contends she did so by assisting Bjork in reporting Gifford's comment, which Bjork primarily characterized as sexual harassment.  The district court found, however, that this was not protected activity because no reasonable person could have believed Gifford's single comment amounted to unlawful sexual harassment.

We agree that Brannum could not have reasonably believed this comment violated Title VII's prohibition against sexual harassment in the workplace.  The Supreme Court has repeatedly reiterated that actionable "sexual harassment . . . must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67 (1986) (quoting Henson v. Dundee, 682 F.2d 897, 904 (11th Cir. 1982)).  This is a high bar, and it requires a showing that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor, 477 U.S. at 65)).  Moreover, "[w]orkplace conduct is not measured in isolation." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (per curiam).  Rather, whether a work environment is so hostile or abusive as to alter the terms and conditions of employment is to be judged in light of

-7-

*all* the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

A recurring theme to be derived from these cases "is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotations omitted). Thus, in Breeden, the Supreme Court rejected a Title VII retaliation claim premised on an employee's contention that she was punished by her employer for objecting to a single sexually offensive remark made by her male supervisor. Breeden, 532 U.S. at 269-71. The Court found the employee did not engage in statutorily protected activity by objecting to the comment, because "[n]o reasonable person could have believed that the single incident . . . violated Title VII's" prohibition against sexual harassment. Id. at 271. That logic is equally applicable here. We do not doubt that Brannum and Bjork were genuinely offended by Gifford's comment, but "Title VII . . . does not set forth a general civility code for the American workplace." Burlington N. & Sante Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted). Thus, we agree with the district court that the single, relatively tame comment at issue here is insufficient as a matter of law to support an objectively reasonable belief it amounted to unlawful sexual harassment. See, e.g., Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003) (finding that a single incident in which a co-worker grabbed the plaintiff-employee's buttocks and later joked about it in front of her and another co-worker did not rise to the level of actionable sexual harassment).

We recognize that Brannum now contends she was actually attempting to object to what she perceived as disparate treatment of Officer Bjork on account of his gender.[5] Even assuming this to be the case, we analyze the reasonableness of Brannum's belief that she was opposing disparate treatment in light of the applicable substantive law. See Breeden, 532 U.S. at 270-72. And, in doing so, we find such a belief equally unreasonable on these facts. Disparate treatment requires, among other things, that an affected employee have suffered "an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination was involved." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005). As our cases have repeatedly emphasized, however, "[a]n adverse employment action means 'a *material* employment disadvantage.'" Id. (emphasis added) (quoting Tademe v. Saint Cloud State Univ., 328 F.3d 982, 992 (8th Cir. 2003)). Thus, we have held that "[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard." Spears v. Mo. Dep't of Corr., 210 F.3d 850, 853 (8th Cir. 2000). We have also reiterated, however, that "minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." Id.

---

[5]Before the district court, Brannum argued that while the documents she signed mistakenly characterized Gifford's comment mainly as sexual harassment, she was trying to object to what she believed was an official MDOC policy of treating male and female officers differently with regard to SNU training requirements. In her submissions to this court, Brannum vacillates between arguing that she was objecting to the disparate treatment of a male co-worker and arguing that she was objecting to what she believed was MDOC's official, gender-biased policy. We note, however, that while Brannum may have believed Officer Bjork was being subjected to disparate treatment, her assertion that she believed Gifford's comment or actions represented an official MDOC policy finds no support in the record. Indeed, the formal grievance listing Brannum as a witness specifically states that Gifford "substituted her views over that of the dep[artment] and then tried subjecting [Bjork] to them based on her point of view and *not* the Dep[artment]." (Emphasis added.)

Here, Gifford removed Bjork from the SNU for a few hours at most, and it is not even clear from the record whether he was actually sent home or was merely reassigned to another unit for the remainder of the day. In any event, there is no dispute that Bjork remained assigned to the SNU and returned to work there the following day. Moreover, nothing in the record indicates Bjork had to undergo any additional training before returning to the SNU. On these facts, no reasonable person could have believed Officer Bjork was being subjected to disparate treatment, because there is no evidence from which a reasonable person could conclude that he had even suffered an adverse employment action. See, e.g., Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1097-98 (7th Cir. 1998) (finding plaintiff's subjective belief that his co-worker was the target of unlawful discrimination objectively unreasonable where, among other things, there was no evidence she suffered anything amounting to an adverse employment action).

In sum, we agree with the district court that Brannum cannot establish a prima facie case of retaliation. Having made this determination, we need not consider her evidence of pretext. Bakhtiari, 507 F.3d at 1138.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.