# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3009
_____

Amanda Gibson

*Plaintiff - Appellant*

v.

Concrete Equipment Company, Inc., A Nebraska Corporation, doing business as Con-E-Co

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 12, 2019
Filed: June 3, 2020
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Amanda Gibson appeals the district court's[1] grant of summary judgment to Concrete Equipment Company ("Con-E-Co") on her sex discrimination claim, her sexual harassment claim, and her retaliation claims under Title VII of the Civil

_____

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.*[2] We affirm.

## I.

Con-E-Co is a Nebraska corporation that manufactures portable and stationary concrete batch plants and mixers. Con-E-Co hired Gibson in December 2013. During her employment at Con-E-Co, Gibson was reprimanded for violations of the company's harassment policy. Gibson used sexualized, vulgar language on multiple occasions, including one incident that resulted in her suspension.

During her employment at Con-E-Co, Gibson claims she experienced several instances of crude, sexually charged behavior directed at her by her coworkers. These incidents included a male employee commenting that she would look "good with a rod between [her] legs," a male employee commenting that her "girls" looked "fuller/perkier," a male employee attempting to grab her breast, and various other incidents.

In March 2015, Gibson witnessed an interaction between plant foreman C.J. Coartney and an African-American employee, Curtis Frost, in which Coartney reprimanded Frost for using a vending machine during Frost's working time. Gibson believed that Frost was reprimanded because of his race. After witnessing the incident, Gibson expressed her concerns about it to Coartney and at least one other plant foreman, Gary Stillman.

Shortly after speaking with Stillman and Coartney, Gibson wrote a letter addressed to both foremen, to which she attached a picture she had drawn containing

---

[2]The NFEPA is patterned after federal law, "and given that neither party points to any differences between them, our analyses of [Gibson's] federal claims apply with equal force to [her] state claims." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 825 n.7 (8th Cir. 2017).

profane language. At the top of the letter, Gibson wrote, "ATTENTION – CONFIDENTIAL. Please return picture when you are finished reading this so I know you've read it." In the letter, she stated that Coartney and Stillman should look at things from Frost's and Gibson's perspectives "because he is one of only a few black guys here" and Gibson was "one of only a few females here." There was no explicit reference to race or sex discrimination in the letter, and the only reference to Frost is the line, "he is one of only a few black guys here." Gibson gave the letter and picture to Coartney and told him that she wanted both Coartney and Stillman to see it.

Soon after Gibson delivered the letter, she was approached by Kari Hockemeier, Con-E-Co's Human Resource Manager, who told Gibson that she had distributed a letter and picture that were deemed offensive and that she was suspended pending an investigation. Ultimately, Hockemeier terminated Gibson's employment.

About a week after Gibson's employment was terminated, she contacted Oshkosh Corporation Company ("Oshkosh"), the parent company of Con-E-Co, and made a complaint pursuant to Oshkosh's Non-Retaliation Policy. She wrote that, in her opinion, Con-E-Co's decision to terminate her employment was "[d]irect retaliation for [her] good-faith actions regarding wrongdoing/unethical behavior by a Foreman." Gibson also attached an eight-page letter detailing every incident of alleged sexual harassment and discrimination she had experienced during her employment. Oshkosh conducted an investigation of the matter and ultimately determined that Gibson's firing was justified.

Gibson then filed claims for sex discrimination, sexual harassment, and retaliation under Title VII and NFEPA in the United States District Court for the District of Nebraska. The court granted summary judgment in favor of Con-E-Co on all claims. Gibson appeals.

## II.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 229 (8th Cir. 2011). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020).

### A.

Gibson first argues that the district court erred in granting summary judgment on her Title VII sex discrimination claim that she was fired from Con-E-Co on account of her sex. She does not allege direct evidence of discrimination, so we analyze her claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Fields v. Shelter Mut. Ins.*, 520 F.3d 859, 863-64 & n.3 (8th Cir. 2008). Under this framework, a plaintiff must first establish a *prima facie* case of sex discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Id.* at 864. If the plaintiff succeeds, the burden shifts to the defendant to "rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). If the defendant rebuts the presumption, the burden shifts back to the plaintiff to demonstrate that the proffered non-discriminatory reason is pretextual. *Id.*

Gibson failed to establish a *prima facie* case of sex discrimination because she did not demonstrate that she met Con-E-Co's legitimate job expectations or that Con-E-Co treated her differently than similarly situated male employees. First, Con-E-Co warned Gibson about her use of sexual language when talking to her

coworkers, such as telling a coworker she only knew how to "nurse babies and suck dick" and on multiple occasions yelling that her "underwear's up her ass." Shortly before her firing, Gibson delivered a picture to her foremen that contained extremely offensive language. These undisputed violations of Con-E-Co's harassment policy show that Gibson was not meeting her employer's expectations, and therefore her firing was justified. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359, 365 (7th Cir. 2009) (affirming summary judgment because a plaintiff's repeated violations of a newspaper's overtime policy demonstrated that she was not meeting her employer's legitimate job expectations).

Second, Gibson also failed to establish that her comparator male coworkers were similarly situated to her because these coworkers, unlike Gibson, were not reported for multiple violations of the harassment policy. To establish a *prima facie* case based on differential treatment, a plaintiff must show that she and the more leniently treated employees were "similarly situated in all relevant respects." *Jones v. Frank*, 973 F.2d 673, 676 (8th Cir. 1992) (noting that establishing a *prima facie* case of sex discrimination requires showing that proffered comparators had "similar work histor[ies]" to the complainant). Of the fourteen male employees that Gibson claims engaged in sexually harassing behavior, she describes only four as engaging in multiple incidents of harassment. And only one of those four employees, Andrew Anderson, was reported to Stillman. Gibson told Stillman that Anderson had made comments to her about previously working as a male stripper and had told her his stripper name was "Horse Cock." Even if Anderson was not reprimanded for this particular incident, there is no record evidence that Anderson, unlike Gibson, was reported at any other time by any other employees.

In contrast, Gibson admits that other employees reported her multiple times for violations of the harassment policy before she submitted the profanity-laced picture that resulted in her firing. For example, she was reported for saying loudly that her "underwear was riding up [her] ass" and for comparing women to motorcycles, saying "[W]hat does a good bike have in common with a good woman? Treat her right, ride her well, she'll go with you anywhere. Don't, she'll dump you

on your ass." Because Gibson has not identified a male comparator whose inappropriate actions were similarly reported to foremen or Con-E-Co's Human Resources Department multiple times, she has also failed to establish a *prima facie* case based on similarly situated male comparators being treated more favorably than she was treated.

Because Gibson did not demonstrate that she met her employer's expectations or that Con-E-Co treated her less favorably than similarly situated comparators, the district court did not err in granting summary judgment on her sex discrimination claim.

## B.

Gibson also argues that the district court erred in granting summary judgment to Con-E-Co regarding her sexual harassment claim based on vulgar behavior directed at her by her coworkers. To establish a *prima facie* case against her employer for sexual harassment by its employees, Gibson must demonstrate that: "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *See Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). The district court granted summary judgment to Con-E-Co on the fourth element, finding that the harassment did not affect a term, condition, or privilege of Gibson's employment. To establish this fourth element, Gibson must demonstrate (1) that the environment was objectively hostile and (2) that she "subjectively perceive[d]" the environment as "abusive." *See Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993); *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 801 (8th Cir. 2009) ("The fourth element involves both objective and subjective components.").

Even if we assume that Con-E-Co's employees' offensive conduct was objectively hostile,[3] establishing the objective component, Gibson's claim fails because she does not demonstrate that she subjectively perceived the alleged harassment as abusive. *See Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 934 (8th Cir. 2002) ("[T]he fourth part of a hostile environment claim includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive."). In a letter to an OshKosh corporate employee who was investigating Gibson's post-termination complaint, Gibson stated, "I loved it there: I told all the guys it was like having a bunch of brothers and uncles I never wanted . . . . I was rarely offended, and the few times I was[,] . . . I handled it . . . ." Moreover, evidence that Gibson "engaged in behavior similar to that which she claimed was unwelcome or offensive," on multiple occasions, demonstrates that the behavior of the accused employees was not unwelcome. *See Beard v. Flying J, Inc.*, 266 F.3d 792, 798 (8th Cir. 2001). Therefore, because Gibson does not establish a genuine dispute of material fact as to the subjective component of her harassment claim, the district court did not err in granting summary judgment to Con-E-Co on this claim.

## C.

Finally, Gibson contends that Con-E-Co violated Title VII because it terminated her employment in retaliation for her complaints of race and sex discrimination. Because there is "no evidence, direct or circumstantial, showing a specific link between [Gibson] and any alleged retaliatory practices," the same *McDonnell Douglas* framework applies to this claim as to her sex discrimination claim. *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1136-37 (8th Cir. 2007) (internal quotation marks and footnote omitted). Gibson must first establish a *prima facie* case that would permit a reasonable jury to find that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) the adverse action

---

[3]During oral argument, Con-E-Co's counsel essentially conceded that the objective component of whether the harassment affected a term, condition, or privilege of Gibson's employment was established.

was causally linked to the protected conduct. *See Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). If Gibson establishes a *prima facie* case, the burden shifts to Con-E-Co to "show a legitimate . . . reason for its actions." *See id.* at 1043. If such a reason is proffered, the burden then returns to Gibson to "present evidence that (1) creates a question of fact as to whether [Con-E-Co]'s reason was pretextual and (2) creates a reasonable inference that [Con-E-Co] acted in retaliation." *See id.* (internal quotation marks omitted). Gibson failed to establish a *prima facie* case for retaliation in response to either her race discrimination or sex discrimination complaints.

First, Gibson asserts that she was fired in retaliation for her letter regarding Coartney's treatment of Frost that she characterizes as a report of race discrimination. She must first establish that her letter to Coartney and Stillman about the vending machine incident constituted protected activity, meaning "opposition to employment practices prohibited under Title VII." *See Bakhtiari*, 507 F.3d at 1137. An individual making a complaint must have an objectively reasonable belief that an actionable Title VII violation has occurred for the complaint to qualify as a protected activity. *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 548-49 (8th Cir. 2008). This reasonableness assessment is made "in light of the applicable substantive law." *Id.*

Race discrimination under Title VII requires that an employee suffer an "adverse employment action" that amounts to a "material employment disadvantage," such as "cuts in pay or benefits" or other actions that "affect an employee's future career prospects." *Jones v. City of St. Louis*, 825 F.3d 476, 480 (8th Cir. 2016). Although Gibson knew Frost had been "written up" after the incident involving his use of the vending machine during working time, she had no reason to think that he had suffered any other repercussions, and written criticism does not constitute a materially adverse action "when it did not result in any change" to the "terms or conditions" of employment. *Wagner v. Campbell*, 779 F.3d 761, 767 (8th Cir. 2015). Because Gibson did not have an objectively reasonable basis for believing that a Title VII violation had occurred, her complaint did not constitute

protected activity. *Brannum*, 518 F.3d at 549. Therefore, the district court did not err in granting summary judgment to Con-E-Co on Gibson's claim of retaliation for reporting race discrimination.

Second, Gibson also failed to establish a *prima facie* retaliation claim based on her reporting of sex discrimination because she did not demonstrate a causal connection between her sex discrimination complaints and the termination of her employment. *See Stewart*, 481 F.3d at 1043. Although Gibson claims she reported several instances of sex discrimination during her employment at Con-E-Co in addition to her letter to Coartney and Stillman a few days before she was fired, she does not offer causation evidence that gives rise to "an inference of retaliatory motive" for the adverse employment action. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). "Generally, . . . more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 716 (8th Cir. 2000). Gibson offers no more than a temporal connection to suggest causation here, and even that connection is, at best, tenuous.

Although Gibson's firing followed closely after her submission of the letter and picture to Stillman and Coartney, the picture contained extremely offensive and sexualized words, and Con-E-Co's harassment policy forbids "sexually suggestive . . . pictures or written words, . . . slurs or innuendos." *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) (noting that a *prima facie* retaliation case "built on temporal proximity[] is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive"). Additionally, Gibson does not present evidence of any concurrent retaliatory measures against her for her earlier complaints or offer other evidence linking her eventual firing with those earlier complaints. *See Stewart*, 481 F.3d at 1043. Because Gibson has failed to offer evidence sufficient to raise a genuine dispute of material fact regarding a causal link between her complaints and her firing, she has not presented a *prima facie* case for retaliation based on sex discrimination.

## III.

For the foregoing reasons, the district court did not err in granting summary judgment to Con-E-Co. We affirm.

_____