# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3188
_____

Daniel Snyder

*Plaintiff - Appellant*

v.

Arconic, Corp., A Delaware Corporation; Arconic Davenport, LLC, A Delaware
Corporation

*Defendants - Appellees*

------------------------------

Equal Employment Opportunity Commission; Lambda Legal Defense and
Education Fund

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: April 9, 2024
Filed: August 14, 2024
[Unpublished]
_____

Before GRUENDER, MELLOY, and KELLY, Circuit Judges.
_____

PER CURIAM.

Daniel Snyder is a former employee of Arconic Davenport LLC, the Iowa outpost of Arconic Corporation, an aluminum company with tens of thousands of employees worldwide (collectively Arconic). Snyder was fired after he made a statement about the rainbow on the company's intranet site. He then sued Arconic for religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the Iowa Civil Rights Act, Iowa Code § 216.6. The parties filed cross-motions for summary judgment, and the district court[1] granted Arconic's motion and denied Snyder's. Snyder appeals, and we affirm.

## I.

"It's a abomination to God. Rainbow is not meant to be displayed as a sign for sexual gender." Snyder wrote this statement while employed at Arconic, believing that he was responding to an anonymous survey Arconic emailed to its employees, and that it "would be seen only by the sender of that survey." But he was mistaken. Although Snyder "did not intend for [his statement] to be public," he had posted it "publicly to a message board on the Arconic company-wide 'intranet.'"

After Snyder made the post, Arconic suspended him for "making an offensive comment on the company intranet." Arconic's Diversity Policy prohibits employee "'conduct that denigrates or shows hostility or aversion towards someone because of' a protected characteristic, which includes conduct that creates an intimidating, hostile, or offensive work environment." Arconic also has an antiharassment policy, and its policies define "harassment [to] include[] circulating on social media outlets connected to the workplace written material that 'denigrates or shows hostility or aversion toward a person or group because of any characteristic protected by law.'" After an investigation, Arconic determined the post "was offensive and violated its policies." It fired Snyder, citing the post and noting his history of disciplinary issues.

---

[1] The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

Snyder sued for religious discrimination and retaliation. He moved for summary judgment on his discrimination claims and Arconic cross-motioned for summary judgment on all claims. The district court denied Snyder's motion after determining that he failed to establish his prima facie case. It also granted Arconic's motion and entered judgment for Arconic. Snyder appeals.

II.

"We . . . review de novo the district court's resolution of cross-motions for summary judgment viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences." Fed. Ins. Co. v. Great Am. Ins. Co., 893 F.3d 1098, 1102 (8th Cir. 2018) (quoting LaCurtis v. Express Med. Transporters, Inc., 856 F.3d 571, 576 (8th Cir. 2017)). "Summary judgment is required 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" LaCurtis, 856 F.3d at 576–77 (quoting Fed. R. Civ. P. 56(a)).

A.

As relevant here, Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of their religion. See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 771 (2015) (quoting § 2000e–2(a)). "'[R]eligion' is defined to 'includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to' a 'religious observance or practice without undue hardship on the conduct of the employer's business.'" Id. at 771–72 (quoting § 2000e(j)). "An employee establishes a prima facie case of religious discrimination by showing that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this belief; (3) the employee was disciplined for failing to comply with the conflicting employment requirement." Wilson v. U.S. W. Commc'ns, 58 F.3d 1337, 1340 (8th

Cir. 1995) (citation omitted); see also Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894, 900 (8th Cir. 2024) (explaining three-part prima facie test for Title VII claims based on failure to accommodate religious beliefs). Because it is dispositive in this case, we only consider the first prima facie element.

There is no dispute that Snyder's religious beliefs about the rainbow are bona fide and sincerely held. And the parties agree that Arconic fired Snyder at least in part for making the post on the company intranet. According to Snyder, this suffices to make out his prima facie case because he only needs to show he had a bona fide religious belief, that his belief was reflected in a statement he made, and that the statement was "'a factor' in Arconic's 'decision' to fire him." But Snyder focuses solely on the content of the statement to the exclusion of the action he took in posting that statement on the company's intranet.[2] Snyder posted a comment that was broadcast, if only temporarily, to all Arconic employees. And Arconic believed that *conduct* violated its facially-neutral company policies.

---

[2]On appeal Snyder does not argue he was fired for merely possessing his belief about the rainbow, and the record would not support such a finding. See Wilson, 58 F.3d at 1340–41 (observing, where Roman Catholic woman made religious vow reflecting her sincerely held religious beliefs to wear anti-abortion button that "showed a color photograph of an eighteen to twenty-week old fetus," that employer who fired her for wearing it uncovered at work had not "oppose[d her] religious beliefs, but rather, was concerned with the photograph. The record demonstrate[d] that [her employer] did not object to various other religious articles that [she] had in her work cubicle or to another employee's anti-abortion button"). Here, the relevant employment requirement does not regulate employee beliefs but prohibits "employee conduct . . . includ[ing] conduct that creates an intimidating, hostile, or offensive work environment." Further, an Arconic Human Resources official who investigated the post testified that Snyder was fired not for his religious beliefs but for his "[v]iolation of company policy." Arconic did not object to Snyder's other religion-related requests, and Snyder acknowledges it had previously "granted him a religious accommodation to not work on Sundays so he could preach at a local church and work with homeless men in his capacity as a part-time pastor."

Snyder makes no claim that the *posting* of the comment was motivated by, or a part of, his religious beliefs. Indeed, Snyder asserts that he posted the comment on the intranet in error, that he "believed his expression had been in response to [an] anonymous survey and would be seen only be the sender of that survey[,]" and that he made it available for all employees only mistakenly. Accepting Snyder's own assertions, his religion did not cause him to act as he did—either by compelling him to post his comment about the rainbow broadly, or by merely suggesting, encouraging, or inspiring him to do so[3]—because, as he has consistently represented, the posting was an unfortunate mistake. In assessing Snyder's argument, we defer to Snyder's own description of his beliefs and his actions. See Ben-Levi v. Brown, 577 U.S. 1169, 136 S. Ct. 930, 934 (2016) (Alito, J., dissenting from denial of certiorari) (observing Supreme Court's repeated warning that it is neither court's nor government's role to "define the scope of personal religious beliefs"). Doing so, we find that by Snyder's own description of events, the action of posting the statement on Arconic's intranet had no religious intent behind it, thus there is no conflict.

Whether a mistake such as the one Snyder made should be a basis for a termination decision is beyond the scope of our review. Banford v. Bd. of Regents of Univ. of Minn., 43 F.4th 896, 900 (8th Cir. 2022) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." (quoting Canning v. Creighton Univ., 995 F.3d 603, 612 (8th Cir. 2021))). Arconic believed Snyder had engaged in conduct justifying his firing. Huber v. Westar Foods, Inc., 106 F.4th 725, 736–37 (8th Cir. 2024) ("The relevant inquiry is whether the [employer] *believed* [the employee] was guilty of the conduct justifying discharge." (quoting Richey v. City of Indep., 540 F.3d 779, 784 (8th Cir. 2008) (alterations in original))). More specifically, Arconic fired Snyder because it believed he violated company policy by making his statement in a post on the company's intranet. See id. ("[Where an] employer takes an adverse action based on a good faith belief that an employee engaged in misconduct, then the employer has

---

[3]Accordingly, we need not address whether "compulsion" is required to create a conflict for the purposes of a prima facie case of religious discrimination.

acted because of perceived misconduct, not because of protected status or activity." (quoting <u>Richey</u>, 540 F.3d at 784)). Because there is nothing in the record to show a conflict between Snyder's religious belief, practice, or observance and Arconic's facially-neutral employment requirements, his discrimination claim fails.

B.

Snyder also appeals the district court's grant of summary judgment to Arconic on his retaliation claim. To establish his prima facie case of retaliation, Snyder must show "that (1) []he engaged in protected conduct, (2) []he suffered an adverse employment action, and (3) the adverse action was causally linked to the protected conduct." <u>Gibson v. Concrete Equip. Co.</u>, 960 F.3d 1057, 1064 (8th Cir. 2020) (citation omitted). Protected activity "mean[s] 'opposition to employment practices prohibited under Title VII.'" <u>Id.</u> (quoting <u>Bakhtiari v. Lutz</u>, 507 F.3d 1132, 1137 (8th Cir. 2007)). "An individual making a complaint must have an objectively reasonable belief [in light of the applicable substantive law] that an actionable Title VII violation has occurred for the complaint to qualify as a protected activity." <u>Id.</u> at 1064 (citation omitted).

Snyder first asserts that a reasonable jury could find he had an objectively reasonable belief that Arconic's use of the rainbow created a Title VII-violating "abusive working environment" and that he was opposing it with his post. He summarizes Arconic's working environment as including approximately three depictions of the rainbow in connection with LGBTQ+ equality or Pride Month. This falls short of this Circuit's standard for "abusive working environment." <u>Singletary v. Mo. Dep't of Corr.</u>, 423 F.3d 886, 892 (8th Cir. 2005) (observing such an environment is created where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment" (citation omitted)). Because it was not objectively reasonable to believe Arconic's use of the rainbow violated Title VII, Snyder's post was not protected activity for the purposes of his retaliation claim.

Alternatively, Snyder asserts that Arconic fired him in retaliation for comments he made in the pre-termination disciplinary meetings about his intranet post, and he argues that those comments were protected conduct. At the district court he characterized his protected conduct during those meetings as his "opposi[tion to] Arconic's suspension and termination of his employment based on his religious comment."[4] Even if we assume that this was protected conduct, and that his firing was "causally linked" to it, Arconic offered a legitimate reason for terminating his employment. Snyder bears the burden of showing that Arconic's proffered reason—the intranet post and his past policy violations—was pretextual. See Gibson, 960 F.3d at 1064 (applying McDonnell Douglas framework when there is no direct evidence of retaliation and observing that once legitimate reason for adverse action is proffered "the burden then returns to [employee] to present evidence that (1) creates a question of fact as to whether [employer]'s reason was pretextual and (2) creates a reasonable inference that [employer] acted in retaliation" (internal quotation omitted)); Rossley v. Drake Univ., 979 F.3d 1184, 1186 (8th Cir. 2020) (allowing affirmance of "grant of summary judgment on any ground supported by the record" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))).

Snyder has not carried his burden. He refers us to two things that, in his view, reflect pretext: a Hearing Letter from Arconic, which answered the grievance he filed about his discharge and which he says contains an "admission that Snyder's intra-hearing comments were a basis for his termination," and what he describes as "Arconic's admitted hostility towards [his] religious beliefs."[5] Snyder asserts "[t]hat is more than sufficient evidence to get to a jury."

---

[4]To the extent he now seeks to broaden his argument or raise new issues beyond what he asserted to the district court and in his opening brief on appeal, he has waived the pursuit of such avenues. See Heuton v. Ford Motor Co., 930 F.3d 1015, 1022 (8th Cir. 2019); Hallquist v. United Home Loans, Inc., 715 F.3d 1040, 1046 (8th Cir. 2013) (citation omitted).

[5]Elsewhere he also references the fact that he was terminated days after the meetings, but he does so as evidence supporting his prima facie case, not pretext.

As to the latter, Snyder declines to specify which facts within his over seventy-page brief show "Arconic's admitted hostility," and instead simply relies on a "*See supra*" citation. "This will not do. . . . 'Judges are not like pigs, hunting for truffles buried in briefs.'" See Bloodworth v. Kan. City Bd. of Police Comm'rs, 89 F.4th 614, 624 (8th Cir. 2023) (quoting Brown v. City of Jacksonville, 711 F.3d 883, 888 n.5 (8th Cir. 2013)); Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006) ("[Plaintiff] fails to direct us to specific record locations supporting [their] challenge. Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

As to the Hearing Letter, it expressly states that Snyder "was disciplined because, while logged into a Company computer, he left a public comment . . . that violated the Company's diversity policy." After this explanation, it also notes that Snyder's comments in the post about the rainbow "and at the hearing demean persons who identify as LGBTQ+ and violate the Company's Diversity Policy." But the Letter does not identify Snyder's comments at the hearing as a reason that he was disciplined, and the language Snyder identifies is insufficient on its own to create a question of fact regarding pretext. See Kempf v. Hennepin Cnty., 987 F.3d 1192, 1196 (8th Cir. 2021); Wierman v. Casey's Gen. Stores, 638 F.3d 984, 995 (8th Cir. 2011) ("To rebut the legitimate, nondiscriminatory reasons set forth by [the employer], [the employee] must point to 'enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reasons for its actions.'" (quoting Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1021 (8th Cir. 2005))). Snyder has failed to identify a genuine factual dispute as to whether Arconic's reasons for firing him were pretextual.

III.

We affirm the judgment of the district court.

_____